THE PEOPLE OF THE STATE OF NEW YORK ex rel. DWIGHT F. RUNDELL, APPELLANT, *v.* WILLIAM W. WILSON, as TREASURER OF THE VILLAGE OF LITTLE VALLEY, RESPONDENT.

*Incorporated villages* — 1870, *chap.* 291, *tit.* 7 — *the price paid for land acquired for widening streets cannot be paid from the highway tax.*

Under the provision of title 7 of chapter 291 of 1870, providing for the incorporation of villages, authorizing the trustees of the village to take and appropriate land in the village for the purpose of opening, widening or changing the streets therein, the price agreed to be paid therefor cannot be paid from the moneys raised by the highway tax, as that is required by section 6 of the said title to be devoted to the purposes of working and improving the roads, avenues, streets, etc., of the village, and is to be kept apart as a separate and distinct fund by the treasurer.

If the treasurer of the village has notice that a warrant, drawn by the board of trustees, and made payable from the highway tax, was given to pay the price agreed to be paid for land acquired for the opening and improving of a street, he may and should refuse to pay the same therefrom.

*Held,* further, that the village was not estopped by the action of the former board of trustees, in drawing and delivering the warrant, from now questioning the right of the claimant to have the order paid out of the moneys raised for highway purposes.

APPEAL from an order of the Erie Special Term, entered in Cattaraugus county, denying a motion for a *mandamus.*

*Charles Z. Lincoln,* for the appellant.

*J. J. Mosher,* for the respondent.

HAIGHT, J.:

The relator, upon notice, moved the Special Term for either a peremptory or alternative writ of *mandamus* requiring the defendant to pay the following order:

"$25.          CATTARAUGUS COUNTY, N. Y.          Warrant No. 449.

"The treasurer of the village of Little Valley will pay to the order of Sarah E. Brooks twenty-five dollars, which sum has been audited and allowed payable out of the moneys appropriated for highway tax to be assessed during the ensuing year in said village for the year 1886. By order of the trustees. Audited by the trustees and entered in the check-book.

"Attest:

"A. C. MERRICK, *President.*
"S. M. WHEATON, *Clerk.*
"Dated LITTLE VALLEY, N. Y., *March* 6, 1886."

The *mandamus* was opposed on the ground that the board of trustees had no right to issue the warrant payable out of the money appropriated for highway tax. From the proceedings of the board, read in opposition to the motion, it appears that the board had acquired of Mrs. Brooks a parcel of land for the purpose of opening and improving Sixth street, and that they had agreed to pay her therefor the sum of $175. That an order was drawn for $150, which was paid, and another order for twenty-five dollars, which was to be paid out of the next highway tax that should be assessed and raised in the village. It further appeared that at the time these orders were drawn the board was composed of A. C. Merrick, president, and Ryan, Fisher and Ayres, trustees. That subsequently and at a meeting held on the 22d day of March, 1886, the board was composed of John A. Seekins, president, Ryan, Fisher and Mosher, trustees. A resolution was passed directing that the sum of $550 be raised for highway purposes for the ensuing year. Subsequently an assessment-roll, with warrant attached for that amount, was delivered to the collector of the village. It further appeared from the moving papers that the collector had collected, of the highway tax so assessed and paid over to the treasurer, more than enough to pay the order in question. It further appeared from the opposing affidavit of the president of the village that all of the

funds raised for highway purposes will be necessary for the purposes named, and that no part thereof was raised for the purpose of paying the order in question.

The papers read upon the motion fail to show under what act the village was incorporated, but it is stated in one of the briefs of counsel that it was incorporated under the general act, chapter 291 of the Laws of 1870, and such we shall assume to be the case for the purpose of disposing of this appeal. Title 7 of that act authorizes the trustees of the village to take and appropriate any land in the village for the purpose of opening, widening or changing the streets in the village, and to agree upon the compensation to be made therefor to the owner, or if they are unable to agree to have the same appraised. It further provides that the damages so agreed upon or determined by appraisal shall be assessed upon the estate, real and personal, in the village, and collected in the same manner as the annual tax is collected, etc.

It thus appears from the provision for the assessment and collection of the ordinary and extraordinary expenses of the village, and section 6 of title 4, as amended by chapter 422, of 1880, provides that, "in addition to the amount raised by the trustees for ordinary expenditures, the trustees shall have power in any one year, in addition to the poll tax, to raise by tax such sum as they may deem necessary, not exceeding in any one year the amount of one per centum on the assessed valuation of such village, to be denominated a highway tax to work and improve the roads, avenues, streets, public squares and parks, lanes, sidewalks and cross-walks of said village, on all persons and incorporated companies owning property and estate, real and personal in said village, to be assessed and collected as all other taxes are by the provisions of this act. The money so raised with the proceeds of the poll tax shall be devoted to the purposes expressed in this section, and kept apart as a separate and distinct fund by the treasurer."

Under this section the treasurer is required to keep this fund separate and distinct from that raised for other purposes and it is to be devoted to the sole purpose of working and improving the roads, avenues, streets, etc., of the village. The trustees, therefore, had no right or power to devote this fund to any other purpose, and when they attempted to do so by drawing the order in payment for

the lands of Mrs. Brooks they were acting outside of their jurisdiction and in violation of the statute. It is urged, however, that the treasurer had no power to overrule the action of the board, and that if he had paid the order in question he would have been protected. Possibly this is so, for the reason that the order does not, upon its face, show that it was not drawn for the purpose of paying for the work upon the streets, and in the absence of knowledge to the contrary he, perhaps, may have been justified in assuming that the order was drawn for a purpose authorized by the statute. But that would hardly justify this court, having full knowledge of all the facts, in further violating the statute by compelling, through its *mandamus*, a diversion of the funds specially set apart under the statute. The treasurer, it appears, did have notice that the order was not drawn for work or improvement of the streets when he refused to pay the order and if, as we have seen, the trustees had no jurisdiction to draw the order payable out of that fund, he was not bound by it or obliged to pay it.

Again, it is urged that the village is estopped by the action of the board of trustees from now questioning the right of the relator to have the order paid out of the moneys raised for highway purposes. It, however, does not appear to us that this contention can be sustained. The board of trustees, it appears, was differently constituted when the order was presented for payment from what it was when the order was drawn. The new board of trustees may be bound by the action of the former board in the making of contracts authorized by the charter where they acted within their jurisdiction and in their line of duty. But we do not understand that the illegal and unauthorized acts of a former board are binding upon the new board, or that the new board is estopped by reason of such illegal or unauthorized acts. If the appellant is correct in his claim then the old board of trustees could have voted away and drawn orders for every dollar of money which the new board could raise or had a right to raise for highway purposes, and if it could do it for one year it could do it for a number of years and each successive board would be estopped from questioning the validity of the orders. The relator states that in case he had been granted an alternative writ he could upon the trial have established the necessary facts to authorize a peremptory writ; upon the hearing

of the motion, however, no claim appears to have been made that any part of this fund was raised for the purpose of paying the order in question, and unless that fact should be established no writ could issue.

The order of the Special Term should be affirmed with ten dollars costs and disbursements, but without prejudice to a renewal of the motion at Special Term upon new papers.

Smith, P. J., Barker and Bradley, JJ., concurred.

Order affirmed with ten dollars costs and disbursements, but without prejudice to renewal at Special Term upon new papers.